# Chesapeake & Ohio Railway Company v. Fiddler's Administrator.

(Decided May 3, 1927.)

## Appeal from Pike Circuit Court.

1.  Railroads.—In action to recover damages for death of pedestrian killed by train in railroad yards, question whether conductor saw deceased in time to avoid injury by exercise of ordinary care held for jury.

2. Appeal and Error.—Where, on appeal from second trial, it appeared that testimony was substantially like that of first appeal, opinion on former appeal held law of case.

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

In the yards of the Chesapeake & Ohio Railway Company at Shelby there are a number of tracks. Just north of the depot is the main track; north of it track No. 1; north of it track No. 2, No. 3, etc. L. G. Fiddler was killed in the yard, while walking on track No. 1. This action was brought to recover for his death. On the first trial of the case the circuit court instructed the jury peremptorily to find for the defendant. There was proof on that trial that a train was backing on the main track and another train was backing on track No. 1, and that the conductor on the backing train on track No. 1 saw Fiddler leave the main track and across to track No. 2, and then saw him walking along on track No. 2 and stepping over toward track No. 1, when he disappeared from his sight. Holding that on these facts it was a question for the jury whether Fiddler's danger was perceived in time to avoid the injury to him by the exercise of ordinary care, the court said:

"This is not a case where a pedestrian was walking along on the outside of a single track. Fiddler was in a yard, where there was a network of tracks. Just prior to the accident, two trains were moving in the same direction. Fiddler's presence on and about the tracks was known. He was seen to be stepping backwards and forwards across the tracks. Just prior to the accident his back was to the approaching train, and he stepped back from track No. 2. He could not step from track No. 2 without going in the direction of track No. 1. If he continued in that direction, he would necessarily step on track No. 1. If he went down between the tracks, his position was such that a step or two to the left might bring him in contact with the approaching train. In view of the situation thus presented, we are constrained to hold that it was for the jury to say

whether the conductor saw Fiddler's peril in time to avoid injuring him by the exercise of ordinary care." Fiddler's Adm'r v. C. & O. R. Co., 213 Ky. 733, 281 S. W. 984.

On the return of the case to the circuit court, the evidence was the same as on the first trial, except that the testimony of the conductor of the train on track No. 1, as to what occurred when the train on the main track approached Fiddler, was in these words:

"When it got down to where Godfrey Fiddler was, what did he do? A. He crossed onto track No. 2, and started on down the road, and it looked like that he was going to keep going that way.

"Q. At the time you last seen him, did he start back towards track No. 1? A. I couldn't tell; he was just walking down the track.

"Q. Didn't you see him step over off track No. 2 onto track No. 1? A. No, sir; he just stepped on the end of the ties of No. 2.

"Q. He stepped from the middle of track No. 2 onto the ties on the end of the rail? A. Yes, sir.

"Q. And then he was out of your sight? A. Yes, sir."

The court is unable to see that there is any substantial difference between this and the testimony given on the former trial. The opinion on the former appeal is the law of the case, and the evidence being practically the same as on the former trial, the circuit court properly submitted the case to the jury as directed by this court on the former appeal.

Judgment affirmed.